188 N.J. Super. 55 (1983)
455 A.2d 1148
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN A. BURKS, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 5, 1982.
Decided January 25, 1983.
*57 Before Judges BOTTER, POLOW and BRODY.
Joseph H. Rodriguez, Public Defender of New Jersey, attorney for appellant (Donald V. Sutton, designated counsel, of counsel and on the brief).
Irwin I. Kimmelman, Attorney General of New Jersey, attorney for respondent (George L. Schneider, Essex County Prosecutor, of counsel; Miriam Kahan Brody, Assistant Essex County Prosecutor, on the letter brief).
The opinion of the court was delivered by BRODY, J.A.D.
This appeal presents the novel problem of determining "the amount involved" in the theft of a negotiable instrument for the purpose of grading the offense under the Code of Criminal Justice. Before adoption of the Code, grading was not required because larceny of a negotiable instrument was a high misdemeanor regardless of its value. N.J.S.A. 2A:119-3.
Defendant was convicted of theft by obtaining a $3,000 check by deception. N.J.S.A. 2C:20-4. A theft is a third degree crime if "the amount involved exceeds $500.00 but is less than $75,000.00." N.J.S.A. 2C:20-2(b)(2)(a). Defendant received a sentence of imprisonment for a term of four years, the presumptive custodial sentence for a third degree crime. His major argument rests on the claim that the check was worthless because it was drawn on an account with insufficient funds to pay it. As a result he contends that the judge erred in denying his motion for acquittal. Alternatively, he contends that the judge committed plain error in failing to direct the jury to determine the amount of the theft and to instruct them with regard to that issue.
Louis Tosoni, the alleged victim, gave the following uncontradicted account of the crime. Tosoni was seeking venture capital when he responded to defendant's ad announcing the availability *58 of business loans. Defendant encouraged him to believe that a $35,000 loan would be forthcoming. After sustaining Tosoni's hopes for over a year and a half, defendant finally reported that he had arranged the loan. He told Tosoni the money would come through only if Tosoni gave him $3,000 to hold as a "good faith binder" until the loan closed, at which time he would keep the $3,000 as his commission.
Tosoni had no checking account. He borrowed a blank unsigned check from his friend Phillip Kotar, telling him only that he wanted to show it to someone. Kotar mentioned to Tosoni that there was practically no money in the account. Tosoni made out the check to defendant in the amount of $3,000 and signed Kotar's name as the drawer. When he later gave defendant the check he told him there were no funds in Kotar's account. Defendant assured Tosoni it made no difference because he would return the check and pay himself the commission out of the proceeds of the loan.
Defendant promptly deposited the check in his checking account in New York, wrote checks totaling $2,000 against this deposit which the New York bank paid, and fled. Kotar's bank refused to pay the check because the account had a negligible balance. All claims and charges were resolved by Tosoni's reimbursing the New York bank $2,000 and by this prosecution.
Before adoption of the Criminal Code, the grading of larcenies generally depended upon "the price or value" of the property stolen. N.J.S.A. 2A:119-2. In cases where the grading statute applied, the judge was required to instruct the jury to determine by its verdict the statutory range within which the price or value fell. Failure to do so constituted plain error, State v. Romero, 95 N.J. Super. 482, 488 (App.Div. 1967), even though the evidence of price or value was uncontradicted. See State v. Fungone, 134 N.J. Super. 531, 535 (App.Div. 1975), certif. den. 70 N.J. 526 (1976).
A check is a negotiable instrument. N.J.S.A. 12A:3-104(2)(b). The Code no longer has a special category for theft of negotiable instruments. Its grading section applies to all thefts of "property," *59 defined as "anything of value." N.J.S.A. 2C:20-1(g). Once it is established that the thing stolen has value, grading turns on the manner in which the theft was committed, the nature of the property stolen or "the amount involved." N.J.S.A. 2C:20-2(b).[1] The present case falls under the last category, so a determination must be made of "the amount involved" in the theft.
Pre-Code case law developed under the former larceny statute may be considered in grading thefts under the Code. Cf. N.J.S.A. 2C:1-1(e). However, it should be noted that the Code expression, "amount involved," is somewhat more flexible than "price or value." We attribute this change to legislative recognition that property such as some stolen negotiable instruments may not have a market value yet their theft would still constitute an appreciable loss to the victim.
The judge apparently assumed that if the jury found defendant guilty, the theft would necessarily have involved the *60 $3,000 face amount of the check, and so he did not have them determine the amount involved. This approach is consistent with the Criminal Law Revision Commission draft of 2C:20-2(b)(4), which reads in part:
The amount involved in a theft shall be deemed to be the highest value, by any reasonable standard, of the property or services which the actor stole or attempted to steal. [New Jersey Penal Code, 1 Report & Penal Code 73 (1971)]
The Legislature, however, rejected this proposal. That portion of the statute as adopted reads, "The amount involved in a theft shall be determined by the trier of fact." The issue of the amount involved in a theft must therefore be given to a jury to decide specifically.
Methods for establishing value in civil cases are to be considered in determining the amount involved in a theft. See State v. Romero, supra, 95 N.J. Super. at 487. Thus, in the case of negotiable instruments, jury instructions will be based in part upon appropriate provisions of the Uniform Commercial Code. For instance, in the present case the jury should be told that Tosoni would be personally liable to a holder in due course such as the New York bank even though Kotar's account had little or no balance. This is so because the drawer of a check is liable for the amount of the check regardless of whether there are sufficient funds in the account to pay it. N.J.S.A. 12A:3-413(2). The bank is a holder in due course to the extent that it gives value for the check. N.J.S.A. 12A:4-208(1)(a); Citizens Nat'l Bank, Englewood v. Ft. Lee S & L Ass'n., 89 N.J. Super. 43, 49-50 (Law Div. 1965). An unauthorized signature on a check operates as the signature of the unauthorized signer in favor of any person who in good faith takes the check for value. N.J.S.A. 12A:3-404(1). Liability to a holder in due course is free from any defense of fraud except for reasonably relied upon misrepresentations of the check's character or essential terms. N.J.S.A. 12A:3-305(2)(c).
The jury need not be taken through all the intricacies of commercial law. It is enough to tell them who, if anyone, could be liable on the instrument and under what circumstances that *61 liability would occur. If it is not likely that anyone would be liable, the amount of the theft would fall in the "less than $200.00" category constituting a disorderly persons offense. See State v. Taylor, 132 N.J. Super. 386 (Cty.Ct. 1974), and cases cited therein. If someone could be liable, the jury is free to find that the amount involved in the theft is the face amount of the instrument. They would ordinarily make such a finding in the usual case of a stolen check where there is no evidence to detract from the expectation of negotiation and payment of the face amount. See People v. Marques, 184 Colo. 262, 266, 520 P.2d 113, 116 (Sup.Ct. 1974); State v. Pacheco, 636 P.2d 489 (Utah Sup.Ct. 1981); Bigbee v. State, 173 Ind. App. 462, 364 N.E.2d 149 (Ct.App. 1977). Here, the fact that the check was negotiated to a holder in due course who paid $2,000 is evidence that there was a reasonable prospect that Tosoni would be liable, at least to that extent. The objective of the statute is to have the trier of fact make a knowing appraisal of the seriousness of the theft measured by the amount involved at the time of the theft and expressed in terms of the appropriate grading range.
Reversed and remanded for a new trial.
NOTES
[1] N.J.S.A. 2C:20-2(b)  Grading of theft offenses.

(1) Theft constitutes a crime of the second degree if the amount involved is $75,000.00 or more or if the property is taken by extortion.
(2) Theft constitutes a crime of the third degree if:
(a) The amount involved exceeds $500.00 but is less than $75,000.00;
(b) The property stolen is a firearm, automobile, boat, horse or airplane;
(c) The property stolen is a controlled dangerous substance as defined in P.L. 1970, c. 226 (C. 24:21-1 et seq.);
(d) It is from the person of the victim;
(e) It is in breach of an obligation by a person in his capacity as a fiduciary;
(f) It is by threat not amounting to extortion; or
(g) It is of a public record, writing or instrument kept, filed or deposited according to law with or in the keeping of any public office or public servant.
(3) Theft constitutes a crime of the fourth degree if the amount involved is at least $200.00 but does not exceed $500.00. If the amount involved was less than $200.00 the offense constitutes a disorderly persons offense.
(4) The amount involved in a theft shall be determined by the trier of fact. Amounts involved in thefts committed pursuant to one scheme or course of conduct, whether from the same person or several persons, may be aggregated in determining the grade of the offense.