213 N.J. Super. 291 (1986)
517 A.2d 171
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
RICHARD WRIGHT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted October 7, 1986.
Decided October 30, 1986.
*292 Before Judges ANTELL, BRODY and D'ANNUNZIO.
Alfred A. Slocum, Public Defender, attorney for appellant (Richard Sparco, designated counsel, Trenton, of counsel and on the letter brief).
W. Cary Edwards, Attorney General (Catherine A. Foddai, Deputy Attorney General, of counsel and on the letter brief).
The opinion of the court was delivered by D'ANNUNZIO, J.S.C., temporarily assigned.
Defendant appeals denial of his motion to suppress evidence, a shotgun. After the denial of his motion, defendant was tried before a jury and was found guilty of possession of a weapon for an unlawful purpose contrary to N.J.S.A. 2C:39-4(a) and acquiring a shotgun without a purchaser identification card contrary to N.J.S.A. 2C:39-10(a) and N.J.S.A. 2C:58-3(b). Defendant *293 was sentenced to a total term of seven years with a period of minimum parole ineligibility of three and one-half years.
The motion to suppress was decided on a stipulation of facts supplemented with minimal testimony of Patrolman Force. The stipulation as set forth in appellant's brief follows:
On March 22, 1984, the Neptune Township Police received a report of a man with a gun at the Monmouth Motel. Patrolman Force responded to the scene. He had been advised that the suspect was a black male and would be walking toward the motel's office. Upon arriving at the scene, Patrolman Force stopped the defendant, Richard Wright to inquire about the incident. At this time, a very distraught black female (Ms. Armstrong) approached the patrolman and advised him that Mr. Wright had held her captive at gun point. Subsequently, Mr. Wright was placed in the custody of another officer while Patrolman Force went with Ms. Armstrong to the motel room that she occupied with Mr. Wright. Ms. Armstrong indicated that the gun could be found within the room, however, the patrolman was only able to locate the carrying case for the gun. Ms. Armstrong then advised the patrolman that Mr. Wright had gone to the back of the building before the police arrived and may have deposited the weapon in that area.
Patrolmen Jordan and Force walked to the rear of the building where they noted the padlock of the motel's storage shed was unlocked. At this time, Mr. Wright was safely in police custody on the other side of the building. Patrolman Force then entered the shed, without the owner's consent, and discovered the gun located underneath a sheet. At this time, the gun was seized as evidence in this matter.
The patrolman's testimony established that the storage shed was a separate building detached from the motel building. It contained mops, brooms, sheets, a lawnmower and rakes but contained nothing in the way of personal effects such as suitcases or luggage.
There is nothing in the record to indicate that the defendant was a motel employee or had authority to enter the shed or use it to store his property.
In deciding the motion, the trial judge found no exigency but did find "There is absolutely no way that this defendant could have reasonably expected a right to privacy which would be constitutionally protected. If he chose to secrete evidence in a place that was not in any way to be or could reasonably be considered a curtilage, he is not entitled to the constitutional protections afforded."
*294 In the circumstances of this case, reasonable expectations of privacy is a questionable standard for evaluating a search and seizure under our State Constitution. State v. Alston, 88 N.J. 211 (1981). However, because the search of the motel's shed was justified by a public safety exigency, it is unnecessary to engage in an analysis of Alston and the United States Supreme Court decisions to which it responded: Rakas v. Illinois, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); United States v. Salvucci, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980); Rawlings v. Kentucky, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
In Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court upheld a warrantless entry and search of a residence. The police had been informed that an armed robbery had occurred and that the perpetrator had been followed to and observed entering the residence in question. The Court specifically justified the search and seizure of certain items, including weapons, on the basis of a safety exigency broader than the right to search as an incident to a lawful arrest. The court stated:
We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, `the exigencies of the situation made that course imperative.' McDonald v. United States, 335 U.S. 451, 456 93 L.Ed. 153, 158, 69 S.Ct. 191 [193]. The police were informed that an armed robbery had taken place and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential; and only a thorough search of the house for persons and weapons could have assured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape. [387 U.S. at 298-299, 87 S.Ct. at 1645-46].
A public safety exigency has been applied in a Fifth Amendment context. In New York v. Quarles, 467 U.S. 649, 104 S.Ct. 2626, 81 L.Ed.2d 550 (1984), a woman informed the police that she had been raped by a black male, that he had entered a *295 nearby supermarket and that he was carrying a gun. Upon entering the supermarket, a policeman identified, pursued and apprehended the suspect. The officer discovered that the suspect was wearing an empty shoulder holster. After frisking and handcuffing the suspect, the policeman asked him where the gun was. The suspect responded "the gun is over there" and nodded in the direction of some cartons. The policeman retrieved a loaded revolver from one of the cartons.
A New York trial court suppressed the gun and the statement "the gun is over there" because the police had not read the Miranda rights to the suspect. The Supreme Court reversed, holding "that on these facts there is a `public safety' exception to the requirement that Miranda warnings be given before a suspect's answers may be admitted into evidence, and that the availability of that exception does not depend upon the motivation of the individual officers involved." 467 U.S. at 655-656, 104 S.Ct. at 2632. The court then reviewed the facts which bear a striking similarity to the case at bar:
The police in this case, in the very act of apprehending a suspect, were confronted with the immediate necessity of ascertaining the whereabouts of a gun which they had every reason to believe the suspect just removed from his empty holster and discarded in the supermarket. So long as the gun was concealed somewhere in the supermarket, with its actual whereabouts unknown, it obviously posed more than one danger to the public safety: an accomplice might make use of it, a customer or employee might later come upon it. [467 U.S. at 657 [104 S.Ct. at 2632]]
Hayden and Quarles highlighted the special significance of the existence of firearms and the threat to public safety which they represent. Cf. Cady v. Dombrowski, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973) (search of automobile trunk for off duty policeman's service revolver justified by concern for public safety); State v. Alston, supra (a vehicle's mobility "and the potential danger posed by the presence of weapons were sufficient exigent circumstances to justify a warrantless search.") 88 N.J. at 234; State v. Esteves, 93 N.J. 498 (1983) (stressed the "significance of weapons" in upholding an automobile search. 93 N.J. at 505.) The instant case involves a firearm and the concomitant threat to public safety.
*296 The police had probable cause to believe that defendant had placed a firearm, a shotgun, in a motel building or on motel grounds. They had been told by Ms. Armstrong that defendant had held her captive at gunpoint and they found an empty shotgun carrying case in the motel room which had been shared by Ms. Armstrong and the defendant. Ms. Armstrong also advised the police that defendant had gone to the rear of the motel before the police arrived.
Although the police had probable cause to believe that the firearm was on motel property, they did not know exactly where it was located. Accordingly, it would have been difficult to prevent others, including possible accomplices and members of the general public (including children), from acquiring possession of the firearm during the period of time required to get a search warrant. We realize that there were no accomplices. But the police did not know that at the time, and were obliged to act on the minimal information then before them.
The warrantless search of the shed, based on probable cause, was justified by the exigencies of the safety of the police and the public.
Affirmed.