219 N.J. Super. 501 (1987)
530 A.2d 833
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ROBERT BALL, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted July 13, 1987.
Decided August 7, 1987.
*503 Before Judges BRODY and SKILLMAN.
Greenberg, Feiner, Wallerstein & Benisch, attorneys for appellant (Stephen B. Benisch, on the brief).
W. Cary Edwards, Attorney General, attorney for respondent (Randall L. Currier, Deputy Attorney General, of counsel and on the brief).
The opinion of the court was delivered by SKILLMAN, J.A.D.
Defendant was convicted by a jury of receiving stolen property with a value in excess of $500, in violation of N.J.S.A. 2C:20-7, and was sentenced to an indeterminate term at the Youth Correctional Complex.
On appeal defendant makes the following arguments:

*504 POINT I: THE COURT BELOW COMMITTED REVERSIBLE ERROR IN DENYING THE DEFENDANT'S NOTICE OF MOTION TO SUPPRESS EVIDENCE.
POINT II: THE COURT BELOW COMMITTED REVERSIBLE ERROR BY DENYING THE APPLICATION OF THE DEFENDANT FOR A CHARGE TO THE JURY TO INCLUDE A CHARGE FOR A FOURTH DEGREE CRIME (THEFT OF PROPERTY HAVING A VALUE LESS THAN $500.00).
POINT III: THE COURT BELOW COMMITTED REVERSIBLE ERROR BY FAILING TO EXERCISE ITS DISCRETION TO GRANT RELIEF TO THE DEFENDANT, BY REASON OF THE FAILURE OF THE STATE TO COMPLY WITH ITS DISCOVERY OBLIGATIONS.
We conclude that the trial court properly denied defendant's motion to suppress. However, we also conclude that the trial court failed to instruct the jury correctly with respect to the elements of the crime of receiving stolen property with a value in excess of $500. Therefore, we reverse the judgment of conviction and remand for a new trial.

I
The motion to suppress was heard on the following stipulated facts which were set forth in the parties' motion briefs. At approximately 2:30 p.m. on November 22, 1985, Officer Christopher O'Neill of the Rahway Police Department received a tip from a confidential, reliable informant that there was a truck in the rear of 111-113 Monroe Street which had a stolen engine in it. A boarding house is located at this address and a number of garages are in the rear. Defendant rents one or more of the garages for the purpose of storing and repairing vehicles.
Upon his arrival at the premises, Officer O'Neill observed an older model 1960 black Chevrolet pickup truck parked in the rear. The pickup truck had no license plates. The vehicle also had no visible vehicle identification number. However, it did have a temporary inspection sticker. The condition of the vehicle was deemed by Officer O'Neill to be inoperable. It was missing its engine hood, tires, and was in overall complete disrepair. A blanket covered the engine of the pickup in place of the metal hood that was missing.
*505 The officer called for a record check of the vehicle's temporary inspection sticker, which revealed that it was issued to a 1977 pickup truck owned by defendant whose residence was listed as 2 Second Street in Avenel. In the opinion of the officer, this information corroborated the informant's tip that there was a stolen engine in the pickup truck.
At this juncture, Officer O'Neill removed the blanket covering the engine and observed a six cylinder engine and transmission that appeared to be in brand new condition. The engine and transmission appeared to be bolted somewhat insecurely to the frame of the truck. The newness of the engine and the way it was fastened to the frame led Officer O'Neill to believe that the engine was stolen. Therefore, the officer took custody of the truck and later confirmed that the engine was stolen.
In denying defendant's motion to suppress the trial court stated as follows:
The question before the Court is whether or not this defendant's constitutional right and expectation of privacy under our Constitution was violated by the police officer. This Court finds that it was not. Based upon the tip and the authority given to the police officer by the Rahway ordinance he had the right, if not the duty, to further check out that seemingly abandoned motor vehicle.
The owner of an automobile who leaves a car in such a place under such circumstances gives up his expectation of privacy relative to that motor vehicle and what such a preliminary investigative look would reveal.
Thus, the Court finds no invasion of the defendant's constitutional right as far as the police officer's action in looking at and taking over this truck under these undisputed circumstances. It's for these reasons that the motion to suppress is denied.
Defendant argues that the entry onto his property to examine the pickup truck was a search conducted without probable cause. In the alternative, defendant argues that even if the police had probable cause, they were required to obtain a search warrant before examining the pickup truck. We conclude that the stolen engine was discovered without conducting any search within the meaning of the Fourth Amendment. We further conclude that even if there was a search, the police had probable cause to believe that there was a stolen engine in *506 defendant's truck and a warrant was not required to authorize the removal of the blanket covering the engine. Consequently, there was no violation of the Fourth Amendment.[1]
The entry of the police onto private property does not constitute a search under all circumstances. United States v. Dunn, ___ U.S. ___, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987). Rather, the protection of the Fourth Amendment is limited to a person's house and the "curtilage" of the house. Id., ___ U.S. at ___, 107 S.Ct. at 1139, 94 L.Ed.2d at 334. "[T]he extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." Ibid. The Court in Dunn further indicated that a determination whether an area falls within the curtilage of a home "... should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id., ___ U.S. at ___, 107 S.Ct. at 1139-40, 94 L.Ed.2d at 334-335.
The application of these factors to defendant's premises leads to the conclusion that the pickup truck was not parked within the curtilage. The proximity of the place where the pickup was parked to the house is unclear from the stipulation of facts. However, it is stipulated that the premises were used as a boarding house and that the garages in back of the house were rented to various parties. The curtilage concept has limited applicability with respect to such multi-occupancy premises because none of the occupants can have a reasonable *507 expectation of privacy in areas that are also used by other occupants. See United States v. Arboleda, 633 F.2d 985 (2nd Cir.1980), cert. den. 450 U.S. 917, 101 S.Ct. 1362, 67 L.Ed.2d 343 (1981); People v. Holt, 91 Ill.2d 480, 64 Ill.Dec. 550, 440 N.E.2d 102 (Sup.Ct. 1982); Commonwealth v. Thomas, 358 Mass. 771, 267 N.E.2d 489 (Sup.Ct. 1971); see generally 1 LaFave, Search & Seizure (2 ed. 1987) § 2.3(f) at 414-417. As for the second factor identified in Dunn, there is no indication that there was any enclosure surrounding the area where defendant's pickup was parked. In fact, it was stipulated that the officer had seen the pickup truck while on routine patrol prior to the day of the alleged illegal search. The third factor identified in Dunn, the use of the area of the search, also points in favor of the conclusion that it was not within any curtilage of the house. The area was one adjoining a boarding house and garages rented to different persons and hence it was not put to uses "... so associated with the activities and privacies of domestic life that the officers should have deemed [the area] as part of [defendant's] home." United States v. Dunn, supra, ___ U.S. at ___, 107 S.Ct. at 1140, 94 L.Ed.2d at 336. Finally, there is no indication that defendant took any steps to protect the area where the pickup was parked from observation by persons passing on the street. Therefore, we have no hesitancy in concluding that the entry of the police officer onto the premises where defendant's pickup was parked was not a search. It follows that there was no requirement that he have probable cause for the entry or that he have secured a warrant.
Furthermore, the officer's observations of the truck after entering the property were not a search. See Texas v. Brown, 460 U.S. 730, 739-740, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983); see generally 1 LaFave, supra, § 2.5(c). "There is no legitimate expectation of privacy, ... shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." Texas v. Brown, supra, 460 U.S. at 740, 103 S.Ct. at *508 1542. Therefore, the police officer's observations of the truck, which revealed that it had no license plates or visible vehicle identification number and, most importantly, that it had a temporary inspection sticker which had been issued to another vehicle, did not constitute a search. See United States v. Good, 780 F.2d 773 (9th Cir.1986), cert. den. ___ U.S. ___, 106 S.Ct. 1523, 89 L.Ed.2d 920 (1986).
We also conclude that the police officer did not conduct a "search" within the meaning of the Fourth Amendment by simply removing the blanket which covered the engine area of the pickup truck. In New York v. Class, 475 U.S. 106, 106 S.Ct. 960, 89 L.Ed.2d 81, 90 (1986), the Court noted that "[t]he exterior of a car ... is thrust into the public eye, and thus to examine it does not constitute a `search'." The Court concluded that a vehicle identification number, even though located on the inside of the car, was "more similar to the exterior of the car than to the trunk or glove compartment" because the number is required by law to be visible. Ibid. Hence, the placement of the obscuring papers over the number could not "... generate a reasonable expectation of privacy where none would otherwise exist" and "[t]he mere viewing of the formerly obscured VIN was not, therefore, a violation of the Fourth Amendment." Id., 475 U.S. at 114, 106 S.Ct. at 966-97, 89 L.Ed.2d at 90, 91.
A similar analysis is applicable in the present case. The engine viewed by the officer was not located within the passenger compartment or the trunk of the vehicle, in which an owner or occupant would have some legitimate expectations of privacy. Furthermore, the apparent purpose of placing a blanket over an engine, which otherwise would be plainly visible, would be to protect it from the elements, not to shield it from public view. Accordingly, we conclude that the removal of the blanket from the engine, like the removal of the papers from the vehicle identification number in Class, did not violate any protected privacy interest.
*509 The situation in this case is different in significant respects from the one in Arizona v. Hicks, ___ U.S. ___, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). That case involved entry into an apartment and hence there clearly was a "search." The entry was made without a warrant, which was justified by the "exigent circumstance" of the discharge of the firearm within the apartment. Under these circumstances, the Court found that when the police moved stereo components found within the apartment to determine their serial numbers, they expanded the warrantless search beyond the scope justified by the exigent circumstances on which the initial entry was based. In contrast, the entry onto the premises where defendant's vehicle was located involved no search. Most importantly, the blanket was removed to view the exterior of a motor vehicle, in which defendant had no reasonable expectation of privacy, see Cardwell v. Lewis, 417 U.S. 583, 94 S.Ct. 2464, 41 L.Ed.2d 325 (1974), rather than an item of personal property located within a home, where any search without a warrant is "presumptively unreasonable." Arizona v. Hicks, supra, ___ U.S. at ___, 107 S.Ct. at 1153, 94 L.Ed.2d at 355. Therefore, we conclude that the engine stolen by defendant was discovered without a search.
Furthermore, even if the removal of the blanket constituted a search, we would conclude that the investigating officer had probable cause to conduct a search and that under the circumstances the search could be conducted without a warrant.
Defendant stipulated that a reliable informant supplied information to the police that there was a truck with a stolen engine in the rear of the premises in question. Although defendant suggests in his appellate brief that the State failed to present supporting evidence of the informant's reliability, the State was entitled to rely upon defendant's stipulation on this point. Furthermore, before removing the blanket from the engine, the investigating officer had already determined that there was a truck at the location identified by the informant and that it had an inspection sticker which had been issued for another vehicle. *510 We are satisfied that under the "totality of [these] circumstances," Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the investigating officer had probable cause to believe that there was a stolen engine in defendant's pickup truck.
We are also satisfied that a warrant was not required before removing the blanket from the engine area of the vehicle. It is true that a warrantless search is presumed invalid. State v. Young, 87 N.J. 132, 141-142 (1981). However, warrantless searches of automobiles and other readily movable property constitute a broad exception to this general rule. See California v. Carney, 471 U.S. 386, 105 S.Ct. 2066, 85 L.Ed.2d 406 (1985). The bases for the exception are the "ready mobility," of motor vehicles and other readily movable property, Id. at 390, 105 S.Ct. at 2068, and the "lesser expectations of privacy," Id. at 391, 105 S.Ct. at 2069, which persons have in their ownership and use. As previously noted, defendant had no reasonable expectation of privacy with respect to the engine in his pickup truck. Furthermore, while the truck appeared inoperable to the investigating officer, there is no indication that it was incapable of being rendered operable and then moved from the place where it was found. In addition, the investigating officer could have had a legitimate concern that the engine might be removed from the truck and moved to another location without repairing the vehicle. Under these circumstances, no warrant would have been required to authorize the removal of the blanket from defendant's vehicle even if that action were deemed to be a search within the meaning of the Fourth Amendment.

II
At the close of the State's case, defendant moved to dismiss on the grounds that the State had failed to prove that the stolen engine allegedly received by defendant had a value in excess of $500. This motion was denied. Defendant next *511 requested that the jury be instructed with respect to the lesser included offenses of theft of less than $500. The trial court denied the request on the grounds that there was nothing in the record to justify the instruction. The defense then rested and the trial court instructed the jury solely with respect to the receipt of stolen property. The jury was not told that it had to find that the stolen property was worth more than $500 as one of the elements of the offense.
N.J.S.A. 2C:20-2b(4) provides that, "[t]he amount involved in a theft shall be determined by the trier of fact." In State v. Burks, 188 N.J. Super. 55, 60 (App.Div. 1983), we held that "[t]he issue of the amount involved in a theft must therefore be given to a jury to decide specifically." Furthermore, as under pre-Code law, see State v. Fungone, 134 N.J. Super. 531, 535 (App.Div. 1975), certif. den. 70 N.J. 526 (1976), the failure to instruct the jury with respect to value is reversible error even if the evidence of price or value is uncontradicted. See State v. Burks, supra, 188 N.J. Super. at 58; see also State v. Ragland, 105 N.J. 189 (1987).
The trial court failed to give the jury any instruction whatever with respect to the value of the stolen property allegedly received by defendant. Hence, by entering a judgment of conviction for the third degree offense of receiving stolen property, the trial court in effect entered a directed verdict with respect to this element of the offense with which defendant was charged. The State properly concedes that this is reversible error. Therefore, the case must be remanded for a retrial. In view of this disposition, there is no need to consider defendant's third point relating to the State's alleged failure to comply with its pretrial discovery obligations before the first trial.
For the foregoing reasons the order denying defendant's motion to suppress is affirmed. The judgment of conviction is reversed and the case is remanded for a new trial.
NOTES
[1] These conclusions make it unnecessary for us to consider the State's alternative contention that defendant's vehicle had been abandoned and thus was properly subject to seizure under a local ordinance dealing with abandoned motor vehicles.