**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2974-15T2

STATE OF NEW JERSEY,

       Plaintiff-Respondent,

   v.

WILLIAM A. MARSHALL, a/k/a BILL
A. BERRY, DOLLAR BI MARSHALL,

       Defendant-Appellant.

_____

Submitted April 25, 2017 — Decided  May 10, 2017

Before Judges Leone and Moynihan.

On appeal from the Superior Court of New
Jersey, Law Division, Mercer County,
Indictment No. 11-06-0593.

Joseph E. Krakora, Public Defender, attorney
for appellant (Margaret McLane, Assistant
Deputy Public Defender, of counsel and on the
brief).

Angelo J. Onofri, Mercer County Prosecutor,
attorney for respondent (Christopher
Malikschmitt, Assistant Prosecutor, of
counsel and on the brief).

PER CURIAM

Defendant appeals the denial of his motion to suppress evidence and the trial judge's ruling that an unavailable witness's statement was admissible under N.J.R.E. 803(c)(1). Following the trial court's rulings, defendant pleaded to an open indictment charging him with second degree certain persons not to possess a firearm, N.J.S.A. 2C:39-7b. The State had previously moved to dismiss the other six counts of the indictment, all of which related to the alleged armed robbery of the victim. Defendant preserved his right to appeal the trial judge's decisions regarding the motion to suppress and the evidentiary ruling.

On appeal, defendant raises the following arguments:

> I. THE TRIAL COURT ERRED IN DENYING THE SUPPRESSION MOTION BECAUSE THE OFFICER'S WARRANTLESS ENTRY INTO DEFENDANT'S BACKYARD WAS UNCONSTITUTIONAL.
>
> II. THE PRETRIAL RULING ALLOWING THE ADMISSION OF TESTIMONIAL HEARSAY IDENTIFYING THE DEFENDANT MUST BE REVERSED. THE ADMISSION OF THIS HEARSAY AT TRIAL WOULD HAVE VIOLATED THE DEFENDANT'S RIGHTS TO CONFRONT WITNESSES AND TO DUE PROCESS OF LAW.

After reviewing the record in light of the defendant's contentions, we affirm.

I. The Suppression Motion

Our review of the trial court's denial of a motion to suppress is limited. See State v. Handy, 206 N.J. 39, 44 (2011). "We must uphold a trial court's factual findings at a motion to

suppress hearing when they are supported by sufficient credible evidence in the record." State v. Hathaway, 222 N.J. 453, 467 (2015). We will "not disturb the trial court's findings merely because '[we] might have reached a different conclusion' . . . or because 'the trial court decided all evidence or inference conflicts in favor of one side' in a close case." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Only when we are "thoroughly satisfied that the finding is clearly a mistaken one and so plainly unwarranted that the interests of justice demand intervention and correction [will we] appraise the record as if [we] were deciding the matter at inception and make [our] own findings and conclusions." Johnson, supra, 42 N.J. at 162.

We owe no deference to a trial court's "interpretation of the law"; such issues are reviewed de novo. Hathaway, supra, 222 N.J. at 467. "A trial court's interpretation of the law . . . and the consequences that flow from established facts are not entitled to any special deference." State v. Lamb, 218 N.J. 300, 313 (2014).

The trial judge found the following facts after two separate

hearings on the motion to suppress, and one on the evidentiary issue.[1]

Officer Czajkowski responded to the area of Southard Street and New Willow Street[2] in Trenton after receiving a dispatch that a black male wearing a blue jacket was walking down New Willow Street. The man was reportedly in possession of a gun.

From his marked patrol vehicle, he saw a man matching the description jump over a fence into the backyard of a house on New Willow. That man was later identified as the defendant. The officer had an unobstructed, well-lit view. He saw the defendant briefly bend over to the ground and then run toward New Willow.

As the officer turned his vehicle onto New Willow, he saw a man on a cell phone running up New Willow, pointing to residences on the street. The man was still on the phone with the 911 dispatcher, reporting that he was the victim of a robbery. His 911 call was the source of the original dispatch of the officer. When

---

[1] The judge's findings of fact on April 30, 2013, related only to the motion to suppress. He found defendant was a trespasser on the property in question. On June 11, 2013, the judge took testimony relating to the motion to suppress and the evidentiary issue. He made additional findings, including that defendant lived at the property; he was not a trespasser.

[2] New Willow Street was, at times, referred to as North Willow in the proceedings below. We refer to the street as New Willow, as did the responding officer during his testimony.

the officer pulled his vehicle up to the man on the cell phone, the officer looked in the direction to which the man was pointing and saw the defendant next to another house on New Willow. The man on the cell phone told the officer, "[h]e's right fucking there."

Only then did the officer exit his vehicle, approach the defendant and place him in custody. He then went to the grassy area where he had seen the defendant bend toward the ground. There, he saw a gun. The gun was subsequently seized. Defendant's certain persons conviction stems from the possession of that gun.

The trial judge found that defendant had no expectation of privacy in the location where the gun was found and denied his motion to suppress.

A. Curtilage

Defendant claims the grassy area was protected curtilage and that the officer had no right to enter that location where the gun with which defendant is charged was found.

"Curtilage is land adjacent to a home and may include walkways, driveways, and porches." State v. Domicz, 188 N.J. 285, 302 (2006) (citing State v. Johnson, 171 N.J. 192, 208-09 (2002)). The extent to which curtilage is protected against unreasonable searches and seizures depends on the well-known factors set forth by the Unites States Supreme Court in United States v. Dunn, 480

U.S. 294, 301, 107 S. Ct. 1134, 1139, 94 L. Ed. 2d 326, 334-35 (1987):

> [T]he proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by.

New Jersey courts have utilized these same factors in determining the propriety of a search of curtilage. See Domicz, supra, 188 N.J. at 302; Johnson, supra, 171 N.J. at 208-09; State v. Lane, 393 N.J. Super. 132, 145 (App. Div.), certif. denied, 192 N.J. 600 (2007).

The trial court's detailed findings of fact, considering the testimony and photographs adduced at the testimonial suppression hearing, supported its conclusion that, although he lived in a house adjacent to the grassy area where the gun was found, defendant did not have a legitimate expectation of privacy in that area. The grassy area was primarily used for parking, but also had other potential recreational uses. The area was accessible from six homes located on New Willow Street. The trial judge found that, notwithstanding a concrete wall that ran along two sides of the property, no barrier prevented "any resident of any of six homes on New Willow from parking anywhere in that grassy area, nor is there any barrier that prevents individuals walking

A-2974-15T2

from New Willow back into that grassy area." Anyone could have accessed the area by walking between the houses on New Willow Street using what the judge described as a "common walkway." The judge also found that the grassy area was accessible, without any impediment, from Southard Street.

No user of curtilage that can be accessed by multiple persons can have a reasonable expectation of privacy in that area. Johnson, supra, 171 N.J. at 209 (citing State v. Ball, 219 N.J. Super. 501, 506-07 (App. Div. 1987)).

Furthermore, the judge found that the officer was in his patrol vehicle, with a clear line of sight unobstructed by the wall, when he viewed defendant jump over the fence, enter the yard, and bend to the ground. Defendant had no reasonable expectation of privacy in the area that was observable from a public place. Lane, supra, 393 N.J. Super. at 146; State v. Gibson, 318 N.J. Super. 1, 10-11 (App. Div. 1999).

B. Exigent Circumstances

The officer's entry on the property was also justified by the exigency of the circumstances.

A search without a warrant is presumptively invalid unless it "falls within one of the few well-delineated exceptions to the warrant requirement." Elders, supra, 192 N.J. at 246 (citations omitted). One of the exceptions is the emergency aid doctrine,

which is a "species of exigent circumstances." Hathaway, supra, 222 N.J. at 468-69 (quoting United States v. Martins, 413 F.3d 139, 147 (1st Cir. 2005)).

The Supreme Court, in Hathaway, set the parameters necessary to endorse an emergency aid search:

> To justify a warrantless search under the emergency-aid doctrine, the State must satisfy a two-prong test. State v. Edmonds, 211 N.J. 117, 132 (2012). The State has the burden to show that "(1) the officer had an objectively reasonable basis to believe that an emergency require[d] that he provide immediate assistance to protect or preserve life, or to prevent serious injury and (2) there was a reasonable nexus between the emergency and the area or places to be searched." Ibid. (internal quotation marks omitted). "The emergency aid doctrine only requires that public safety officials possess an objectively reasonable basis to believe - not certitude - that there is a danger and need for prompt action." State v. Frankel, 179 N.J. 586 (2004). The reasonableness of a decision to act in response to a perceived danger in real time does not depend on whether it is later determined that the danger actually existed.
>
> [Id. at 470.]

The officer's actions here certainly met the two prong test.

"Police officers oftentimes must rely on information provided by others in assessing whether there is probable cause to believe a crime has been committed or whether there is an objectively reasonable basis to believe an ongoing emergency threatens public safety." Id. at 470-71. "Ordinary citizen[s]" who report crimes,

either in person or by calling 911, have been deemed reliable sources whose information can establish the reasonable basis to believe an emergency required the immediate action of law enforcement. Id. at 471-74, 477.

Here the source of the information was the person reporting he was the victim of a robbery. He was both an eyewitness who had direct contact with the officer, and a 911 caller. He reported that defendant had a gun, and told the officer where the defendant was located. This was a rapidly unfolding event. Once the officer arrested defendant and discovered he did not have a gun on his person, the danger to be prevented was obvious. Id. at 476. The gun posed a threat to anyone who found it on the ground. See State v. Wright, 213 N.J. Super. 291, 295 (App. Div. 1986) (recognizing that the potential danger posed to public safety by weapons presents a sufficient exigency to justify a warrantless search). That information provided the reasonable basis to satisfy the first prong of Hathaway. The officer would have been remiss if he failed to enter and search the grassy area where he had seen defendant bend to the ground.

The officer observed defendant jump over the fence, bend down toward the ground and then run. Those actions provided the reasonable nexus between the emergency and the place searched, satisfying the second Hathaway prong. It was reasonable to

conclude that the man, who reportedly had a gun, put that gun down as he ran, after seeing the officer driving in the area in a marked vehicle.[3]

The search of the grassy area and the seizure of the gun were justified under the emergency aid doctrine.

II. The Hearsay Statement

The State claimed the 911 caller was unavailable and wanted to introduce his statement, "[h]e's right fucking there," through the testimony of the officer to whom the statement was made. The trial court admitted the 911 caller's statement, made as he pointed toward the location where defendant was standing, as a present sense impression pursuant to N.J.R.E. 803(c)(1).

Defendant claims error. He argues that the admission of the statement, had the case gone before a jury, would have violated his Confrontation Clause rights.[4]

This court reviews "the trial court's evidentiary rulings for abuse of discretion." State v. Gorthy, 226 N.J. 516, 539 (2016). Thus, "trial courts are granted broad discretion in making

_____

[3] This was not a case where the abandonment of the weapon was occasioned by the approach of the suspect by the police officer. The officer made no effort to stop and seize defendant; he had not yet exited his vehicle when defendant bent toward the ground. See Gibson, supra, 318 N.J. Super. at 9.

[4] Defendant does not contest the trial judge's ruling that the statement was admissible as a present sense impression.

decisions regarding evidentiary matters, such as whether a piece of evidence is relevant . . . and whether a particular hearsay statement is admissible under an appropriate exception." State v. Scharf, 225 N.J. 547, 572 (2016) (citations omitted). To reverse the trial court's evidentiary ruling, we must find that the trial judge's decision was "so wide of the mark that a manifest denial of justice resulted." State v. Carter, 91 N.J. 86, 106 (1982).

A present sense impression is not dependent on the declarant's availability. N.J.R.E. 803(c). Nonetheless, "[t]estimonial statements of witnesses absent from trial have been admitted only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford v. Washington, 541 U.S. 36, 59, 124 S. Ct. 1354, 1369, 158 L. Ed. 2d 177, 197 (2004).

The question here centers on whether the 911 caller's statement was testimonial or nontestimonial. The United States Supreme Court, in Davis v. Washington, 547 U.S. 813, 822, 126 S. Ct. 2266, 2273-74, 165 L. Ed. 2d 224, 237 (2006) (footnote omitted), distinguished between the two types of statements:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there

11

is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

The statement here was not made in response to any question, statement, or gesture from the officer. The 911 caller blurted it out while he was looking directly at the defendant who he knew had been, moments before, in possession of a gun. Indeed, the whole exchange was one-sided; the officer said nothing to the caller. The emergent nature of these circumstances still existed. Again, the caller was still on the phone with the dispatcher. Like the statement made by the 911 caller in <u>Davis</u>, the primary purpose of the 911 caller here was to notify the officer on the scene of the proximate whereabouts of a man with a gun in a still unfolding situation.

The trial judge properly ruled that the 911 caller's statement was nontestimonial. The admission of the statement through the testimony of the police officer would not have violated the holding in <u>Crawford</u>.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2974-15T2