273 N.J. Super. 374 (1992)
641 A.2d 1129
SAXON CONSTRUCTION & MANAGEMENT CORP., PLAINTIFF,
v.
MASTERCLEAN OF NORTH CAROLINA INC., AND FIRST INDEMNITY OF AMERICA INSURANCE COMPANY, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided June 10, 1992.
*375 Anthony J. Belkowski for plaintiff, (Peckar and Abramson, attorneys)
John C. Hearn for defendant Masterclean of North Carolina Inc., (Carro, Spanbock, Kaster and Cuiffo, attorneys)

OPINION
ARNOLD, P.J.Cv.
In this lawsuit tried before the court without a jury, the court found that the defendant, a subcontractor on a construction job, had breached its contract with the general contractor. Nevertheless, the defendant maintained it was entitled to receive approximately $200,000 in savings realized by the general contractor in the course of mitigating its damages. The defendant's argument was based on a provision in the contract which provides that in the event the subcontractor breaches the contract, it is entitled to the difference between the unpaid balance of the contract sum and the cost of finishing the work. This court held that such a provision is void as against public policy. This opinion is intended to supplement the court's oral opinion. See R. 2:5-6(c).
This case involves a construction project at the United States Veterans Administration Medical Center in Lyons, New Jersey (the VA project). Plaintiff, Saxon Construction and Management Corporation (Saxon), was the general contractor on the VA project. *376 The defendant, Masterclean of North Carolina, Inc. (Masterclean), and Saxon entered into a $895,000 subcontract pursuant to which Masterclean was to perform asbestos abatement and demolition work in four hospital buildings on the VA project.
After a trial without a jury, this court found that Saxon had proved, by at least a fair preponderance of the credible evidence, that Masterclean breached the subcontract by failing to begin work on a third building after having substantially completed work on the first two buildings. Saxon sought damages from Masterclean resulting from the breach, but it was not disputed by the parties that Saxon had so successfully mitigated its damages that it had actually saved money. Masterclean argued that Saxon had saved about $200,000 by subcontracting to other firms the remainder of Masterclean's work, while Saxon argued that the saving was less than $100,000. Relying on the following provision in the contract between the parties, Masterclean sought to obtain those savings:
ARTICLE 13: If the subcontractor persistently or repeatedly fails or neglects to carry out the work in accordance with the contract documents or otherwise to perform in accordance with this agreement and fails within four days after receipt of written notice to commence and continue correction of such default or neglect with diligence and promptness, the contractor may, and without prejudice to any other remedy he may have, terminate the subcontract, take possession of all materials and finish the work by whatever method he may deem expedient.
If the unpaid balance of the contract sum exceeds the expense of finishing the work, such excess shall be paid to the subcontractor, but if such expense exceeds such unpaid balance, the subcontractor shall pay the difference to the contractor (emphasis supplied).
This provision is apparently commonly included in construction contracts. See e.g., Mor-wood Contractors Inc. v. Ottinger, 205 Ill. App.3d 132, 150 Ill.Dec. 444, 562 N.E.2d 1247 (1990). However, exhaustive research by counsel and the court has disclosed no case in which the issue raised in this case has been decided.
Although Masterclean in its supplemental trial brief admits that it would have only made a profit of $40,000 from its work on the last two buildings, it seeks approximately $200,000 in damages pursuant to Article 13. It argues that the language of Article 13 *377 is clear and unambiguous and that this court must enforce it as a contract between two commercial entities. This court disagrees.
Certainly, it has long been the law that the principle of freedom of contract permits competent parties to make such agreements as they wish unless the agreement violates public policy in which case a court will not enforce it. Printing and Numerical Registering Co. v. Sampson, 19 L.R.Eq. 462 (1875); Terminal Construction Corp. v. Bergen County Hackensack River Sanitary Sewer District Authority, 34 N.J. Super. 478, 504, 112 A.2d 762 (App.Div. 1954), modified, 18 N.J. 294, 113 A.2d 787 (1955).
The power of a court to declare a contractual provision void as against public policy must be exercised with caution and only in cases that are free from doubt. Sabine Corp. v. ONG Western, Inc., 725 F. Supp. 1157 (W.D.Okla. 1989). The illegality must be clear and certain. Thacher Hotel, Inc. v. Economos, 160 Me. 22, 197 A.2d 59 (1964). But the cases and the treatises do not provide anything but the most general guidelines as to what constitutes "public policy" with respect to contract provisions. For example, it is said that:
Public policy, with respect to contract provisions, is a principle of law whereby a contract provision will not be enforced if it has a tendency to be injurious to the public or against the public good. Whether a particular provision is against public policy is generally provided for by statute or by the State Constitution. However, when contract provision is inconsistent with fair and honorable dealing, contrary to sound policy and offensive to good morals, courts have the authority to declare the provision void as against public policy.
[Johnson v. Peterbilt of Fargo, Inc., 438 N.W.2d 162, 163-64 (N.D. 1989) (citations omitted).]
Thus, one treatise concludes that "the meaning of the phrase `public policy' is vague and variable, and there is no fixed rule of definition applicable to all cases." 17A Am.Jur.2d Contracts § 258 (1991).
Nevertheless, it appears that a balancing test should be employed to determine whether a contractual provision is void as against public policy. See Town of Newton v. Rumery, 480 U.S. *378 386, 399, 107 S.Ct. 1187, 1195, 94 L.Ed.2d 405 (1987) (O'Connor, J., concurring). In that balancing test, the "public policy" is weighed against the enforcement of the contractual provision. Restatement (Second) of Contracts § 178(1) (1981).
In the balancing test, this court will use the following factors to determine the weight of "public policy."
(1) The extent to which Article 13 conforms to existing law;
(2) Whether Article 13 encourages performance of the contract between the parties;
(3) Whether Article 13 promotes efficiency or waste. See Eastern S.S. Lines v. United States, 112 F. Supp. 167, 125 Ct.Cl. 422 (1953);
(4) Whether Article 13 is consistent with fair and honorable dealing.
First, neither the parties nor this court is able to find any jurisdiction which has a rule of law such as that contained in Article 13.
Second, Article 13 discourages the defendant from performing the contract. Here, Masterclean encountered serious difficulties in performing the asbestos removal in the first two buildings and subsequently breached the contract. Masterclean knew that if Saxon spent less money to complete the last two buildings than it would have had to pay Masterclean pursuant to the contract, then Masterclean would profit from breaching the contract. That prediction turned out to be correct as Masterclean now seeks $200,000 pursuant to Article 13 while admitting it would have made only another $40,000 in profit had it not breached the contract.
Third, Article 13 promotes waste. If it is enforced, it encourages general contractors faced with a breach by a subcontractor not to mitigate damages. A court should not encourage such waste.
Fourth, as this court views it, Article 13 is not consistent with fair and honorable dealing because it permits a culpable party to be unjustly enriched at the expense of an innocent party.
Balancing these factors of "public policy" against the principle of freedom of contract, this court finds that they heavily outweigh *379 that principle. Accordingly, this court holds that Article 13 is not enforceable as against public policy.