711 A.2d 346

STONEHILL PROPERTY OWNERS ASSOCIATION, INC., ASPEN SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., VERNON VALLEY RESORT HOTEL SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., VAIL SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., WIMBLEDON SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., MOUNTAINSIDE SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., AND GREAT GORGE VILLAGE SOUTH CONDOMINIUM, INC., PLAINTIFFS–RESPONDENTS, v. TOWNSHIP OF VERNON AND THE MAYOR AND COUNCIL OF THE TOWNSHIP OF VERNON, DEFENDANTS–APPELLANTS.

STONEHILL PROPERTY OWNERS ASSOCIATION, INC., ASPEN SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., VERNON VALLEY RESORT HOTEL SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., VAIL SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., WIMBLEDON SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., MOUNTAINSIDE SECTION CONDOMINIUM COUNCIL OF STONEHILL, INC., AND GREAT GORGE VILLAGE SOUTH CONDOMINIUM, INC., PLAINTIFFS–APPELLANTS, v. TOWNSHIP OF VERNON AND THE MAYOR AND COUNCIL OF THE TOWNSHIP OF VERNON, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued April 21, 1998—Decided May 26, 1998.

Before Judges LONG, KLEINER and KIMMELMAN.

*William F. Fitzgibbons,* argued the cause for appellants in A–4142–96T3 and respondents in A–5590–96T3 (*Fitzgibbons & Goovaerts,* attorneys; *Mr. Fitzgibbons,* of counsel and on the briefs).

*John J. Lamb,* argued the cause for appellants in A–5590–96T3 and respondents in A–4142–96T3 (*Beattie Padovano,* attorneys; *Mr. Lamb* and *Francis B. Sheehan,* on the briefs).

*Michael S. Karpoff,* argued the cause for amicus curiae Community Associations Institute–New Jersey Chapter, Inc. in both appeals (*Hill Wallack and Hersh, Ramsey & Berman* and *DiFazio, Radom & Weiter,* attorneys; *Ronald L. Perl, Ben Lambert, James M. McCarthy* and *Douglas Ehrenworth,* of counsel; *Mr. Karpoff, J. David Ramsey* and *Susan J. Radom,* on the brief).

The opinion of the court was delivered by

KIMMELMAN, J.A.D.

In this action in lieu of prerogative writs, the trial court considered the extent of the obligation of the Township of Vernon (the "Township" or "Vernon") to reimburse the Stonehill Property Owners Association, Inc. ("Stonehill"), pursuant to the provisions of the Municipal Services Act, *N.J.S.A.* 40:67–23.2 to –23.8 (the "Act"), for costs incurred by Stonehill in providing certain municipal services to and for the six component condominium communities existing and operating under the umbrella of Stonehill and known as Great Gorge Village. We are now called upon to consider the reach of the Act, the services eligible for reimbursement, and the rate thereof.

As defined by the Act, Stonehill is a qualified private community within the Township. *N.J.S.A.* 40:67–23.2e. In connection with its operation of the Village, Stonehill pays for the cost of providing certain essential services, such as the removal of snow and ice from the roads and streets and lighting of the roads and streets. As it has the right to do, the Township elected not to provide such services directly. Consequently, in accordance with *N.J.S.A.*

40:67–23.3a, the Township is obligated to reimburse Stonehill for the services it provides. The statute requires, in pertinent part, that:

[T]he governing body of every municipality shall reimburse a qualified private community for the following services ... or provide the following services within a qualified private community in the same fashion as the municipality provides these services on public roads and streets:

(1) Removal of snow, ice and other obstructions from the roads and streets;

(2) Lighting of the roads and streets, to the extent of payment for the electricity required, but not including the installation or maintenance of lamps, standards, wiring or other equipment; and

(3) Collection of leaves and recyclable materials along the roads and streets and the collection or disposal of solid waste along the roads and streets.

[*N.J.S.A.* 40:67–23.3a.]

I

At trial, there was no basic dispute as to either the costs incurred by Stonehill in furnishing the *N.J.S.A.* 40:67–23.3a services, or the costs incurred by Vernon in providing such services for the rest of the Township. The dispute centered around the following issues:

(1) the construction of *N.J.S.A.* 40:67–23.3a with respect to whether a municipality must make reimbursement of the total costs incurred by a qualified private community in providing the designated services or whether reimbursement is limited to the level it would cost the municipality to provide the services "within a qualified private community in the same fashion as [it] provides [the] services on public roads and streets."

(2) the length of the interior roadways within Great Gorge Village and whether access to and through parking lots should be added to the 3.9 miles which the Township maintained was eligible to be considered as a base in determining reimbursement, thus bringing the total to 6.38 miles, as contended by Stonehill;

(3) whether and the extent to which a difficulty factor should be added to the Township's average snow removal costs for roads within the Township with respect to its obligation to reimburse

Stonehill for snow removal costs for the interior roadways of Great Gorge Village;

(4) whether the electricity costs for Great Gorge Village's total of 387 interior street lights should be reimbursed in full or be limited to cover only the costs for those lights located at intersections; and

(5) whether Stonehill was entitled to reimbursement for street sweeping costs.

After a bench trial, Judge Stanton rendered a perceptive and comprehensive oral opinion, which was reflected in an Order For Judgment dated May 3, 1997. He ruled that:

(1) Stonehill is a qualified private community within the meaning of the Act;

(2) there are 6.38 miles of eligible roads and streets within Stonehill that are to be used as a base for reimbursement;

(3) Stonehill is entitled to recover its costs for snow removal at the average cost per mile incurred by Vernon for its own roads and streets, plus a difficulty factor of 50%;

(4) that 52 of the 387 street lights on Stonehill's roads and streets, or 13.4%, illuminate intersections, and Stonehill is entitled to reimbursement of its electricity costs at that percentage rate; and

(5) Stonehill is not entitled to reimbursement for the costs incurred in sweeping the interior roads and streets.

By way of perspective, a judgment covering reimbursement for several years was rendered against Vernon in the amount of $64,972.45, including pre-judgment interest through April 15, 1997.

Vernon, its mayor and council, appeal from the awards to Stonehill, contending that the trial court erred:

(1) in including access to and through parking lots in calculating the roadway mileage relative to the recovery for snow and ice removal costs;

(2) in determining a 50% difficulty factor over and above Vernon's annual average cost per mile for snow and ice removal; and

(3) in awarding Stonehill electrical cost reimbursement for 52 streetlights.

Stonehill and the six component condominium communities have filed a separate appeal, contending that the trial court erred:

(1) by using the Township's annual average cost per mile for snow and ice removal plus a difficulty factor limited to 50%, rather than using Stonehill's actual costs;

(2) in limiting Stonehill's electrical cost reimbursement to only 52 of Great Gorge Village's 387 streetlights; and

(3) in denying Stonehill any reimbursement for street sweeping costs.

Community Associations Institute–New Jersey Chapter, Inc. was granted leave to appear as *amicus curiae* in both appeals, which have been consolidated for purposes of this opinion.

## II

Stonehill administers, operates, and manages six planned condominium unit communities in the Township, which are collectively known as Great Gorge Village. The village is composed of six sections comprising 1305 units, including both townhouses and single-family homes attached in groupings of four to twelve units per building. The village covers about one-square mile in area, while the total area of Vernon is sixty-seven square miles. The residents of the village comprise 14% of the households in Vernon, but account for approximately 20% of the Township's municipal tax revenue.

The Township is historically a rural community, but is in the process of becoming more suburban as it attempts to attract recreational development, such as ski resorts and attendant residential facilities. The Township maintains approximately 100 miles of public roadways within its borders. In addition, ten other

qualified private communities located within the Township have approximately 65.78 miles of interior roadways, and there are some twenty to thirty miles of other roadways within the Township that are not considered to be public.

Prior to the institution of this in lieu action, the Township had avoided its obligation to make reimbursement. On appeal, the Township does not contest its obligation under the Act, only the extent thereof. Accordingly, we shall address the issue of the necessary extent of reimbursement, mindful of the Legislature's underlying intention in passing the Act; to relieve condominium owners of the burden of paying twice for municipal services. When the Act was in bill form in the Legislature, it was accompanied by a sponsor's statement which said, in part:

The effect of this bill will be to help eliminate double payment for some services which the residents of qualified private communities now pay through property taxes and fees to their association.

[*See New Jersey St. League of Mun. v. State*, 257 *N.J.Super.* 509, 515–16, 608 *A.*2d 965 (App.Div.1992), *appeal dismissed,* 133 *N.J.* 419, 627 *A.*2d 1129, *certif. dismissed,* 133 *N.J.* 423, 627 *A.*2d 1132 (1993).]

### III

Although Vernon has the right to directly provide the services specified in *N.J.S.A.* 40:67–23.3a(1), (2) and (3) within a qualified private community, Vernon has opted not to do so and, accordingly, is subject to the reimbursement requirement set forth in *N.J.S.A.* 40:67–23.3a.

Stonehill and the *amicus* urge that this section of the Act requires that reimbursement be made to cover the actual costs incurred by a qualified private community. They argue that the municipality's reimbursement obligation is not modified by the statutory wording: "in the same fashion as the municipality provides these services on [its] public roads and streets." *N.J.S.A.* 40:67–23.3a. Vernon, on the other hand, contends that the level of reimbursement is modified by that language, as Judge Stanton ruled. We agree.

■ While *N.J.S.A.* 40:67–23.3a could have been drafted more clearly, our obligation is to read that section sensibly and not arrive at a construction which distorts its true intent. *See Young v. Schering Corp.*, 141 *N.J.* 16, 25–26, 660 *A.*2d 1153 (1995); *Essex Crane Rental Corp. v. Director, Div. on Civ. Rights*, 294 *N.J.Super.* 101, 105, 682 *A.*2d 750 (App.Div.1996); *Parker v. Esposito*, 291 *N.J.Super.* 560, 566, 677 *A.*2d 1159 (App.Div.1996).

It is not reasonable for the residents of Great Gorge Village to expect that reimbursement for the specified municipal services supplied and paid for by themselves should be at a monetary level or rate greater than the services enjoyed by the rest of the Township's residents. We glean from the record that, to a certain extent, Great Gorge Village is operated and managed by Stonehill as an upscale community. That is their choice, but they may not expect the other taxpayers of the Township to support the level of their municipal amenities in a greater degree than the taxpayers contribute to their own. In short, a condominium community may not upgrade such services for itself at the expense of the general taxpayers of the municipality. Clearly, this is what the Legislature intended when it used the phrase "in the same fashion." That phrase is intended to apply to either of the municipality's choices under *N.J.S.A.* 40:67–23.3a. The municipality may undertake to perform the specified services for the qualified private community "in the same fashion" as it provides those services on its public roads and streets, or it may make reimbursement to the qualified private community so that it can provide the services "in the same fashion" as those services are provided on the public roads and streets. Such is the common sense reading of *N.J.S.A.* 40:67–23.3a.

## IV

At trial, Stonehill contended that the roads within Great Gorge Village are difficult to clear and that they should be fully reimbursed for their actual costs for snow and ice removal. Vernon

contended that reimbursement should be based on the Township's annual average cost per mile to clear public roads of snow and ice.

After reviewing the snow and ice removal costs incurred by the respective parties, Judge Stanton found that Vernon "was able to clear its roads of snow and ice at a cost which was substantially below that of the private community."

The topography of the Village was described in the record as follows:

Great Gorge Village is built literally on the side of Hamburg Mountain. To a certain degree it's terraced to the extent that it is an ever increasing climb to the top on the side of the mountain, and at different elevations if [sic] flattens out for parking lots and building terraces and things like that. There are buildings that are substantially below the roadways. There are buildings that are on raised platforms, substantially above the roadways. There is a structural steel bridge. There is a nine-hole golf course, and there are two ski slopes which pass through certain parts of the village.

. . .

The roads are curvy, the roads are winding, the roads are very steep. There are some very sharp drops. The speed limits are very low, and because it is on the side of a mountain, the elevation changes means [sic] that areas ice up more or less frequently than other areas, and precipitation can rapidly change to ice, which causes serious safety problems. And without streetlighting you're unable to see whether or not what's in front of you is safe to drive on.

■ It appeared that Great Gorge Village's roads were among the steepest, with the highest elevations, in the Township. Judge Stanton found that the Township's roads, on average, were less difficult to plow and that, "on average the municipal roads can be plowed more efficiently on a less costly basis." After reviewing the actual costs involved, it was his considered judgment that a fair enhancement of the cost to plow the Village's roads "would be to add fifty percent to what it cost the municipality [per mile] to do its roads." The judge recognized that his enhancement or difficulty factor was not an "exact scientific figure," but was arrived at because the pattern of clearing the Village's roads was "substantially more difficult than the average throughout the municipality." To be sure, Judge Stanton had the "feel" of the case, and his estimate of the difficulty factor at fifty percent was not at all "wide of the mark." *See Township of West Windsor v.*

*Nierenberg,* 150 *N.J.* 111, 133, 695 *A.*2d 1344 (1997) (quoting *State v. Johnson,* 42 *N.J.* 146, 161–62, 199 *A.*2d 809 (1964)).

█ Judge Stanton also determined that the entire 6.38 miles which Stonehill characterized as roadways should be the mileage used in calculating the reimbursement for snow and ice removal. The Township's assertion that approximately 2.4 miles thereof were, in effect, driveways and parking lots was rejected, because it was found that the "so called parking areas" were used as a basic way to facilitate vehicular traffic in the Village, which was "essentially a recreational community . . . built around a golf course and a ski resort area . . . and [because of that was] laid out in an unusual way." *Cf. Bligen v. Jersey City Housing Auth.,* 131 *N.J.* 124, 129–30, 619 *A.*2d 575 (1993) (distinguishing between streets and driveways). Such ruling will not be disturbed. *West Windsor, supra,* 150 *N.J.* at 132–33, 695 *A.*2d 1344.

V

Stonehill contends that it should be paid for the electricity used for all 387 streetlights along the streets within Great Gorge Village. Vernon contends that reimbursement should only be made for those streetlights located at major intersections, such as county or state roads, arguing that this is the level at which lighting is provided in the rest of the Township.

Judge Stanton found that the Township had a maximum of 77 streetlights interspersed along its 100 miles of public roads. Stonehill, with 387 streetlights, had a "vastly superior" system when compared with the quality of lighting supplied by Vernon in the Township. The judge found that it made no rational sense to require the Township to pick up Stonehill's entire electric bill when the Act requires reimbursement only for services "in the same fashion as the municipality provides [the] services on public roads and streets." *N.J.S.A.* 40:67–23.3a.

█ The record does not reflect that all 387 streetlights in Great Gorge Village were required by the Township's engineer or

by the Planning Board when the Village was planned. The reasonable inference is that the "vastly superior" streetlighting of the Village was voluntarily included as a matter of planning by the developers of Great Gorge Village. Under these circumstances, the trial court was justified in looking at the actual practice of Vernon in providing streetlighting throughout the Township as an appropriate means for meeting the "same fashion" test required by the Act. *See West Windsor, supra,* 150 *N.J.* at 132, 695 *A.2d* 1344.

█ The trial court found that there was no clear policy on streetlighting in the Township. Some, but not all, roadway intersections were lit. The testimony did not refine in absolute terms the ratio of how many lit intersections there were over unlit intersections. Without clear guidelines, Judge Stanton concluded that it was a reasonable standard to consider that all Township roadway intersections were illuminated and that Stonehill should be reimbursed only for the electricity required to light its streets in the "same fashion." He then pored over the mapwork of the Village and counted 52 intersections within it. He calculated, mathematically, that 52 of 387 streetlights meant that 13.4% of the Village's streetlighting was intersection-related and that such percentage of the Village's electric bill equated with the Township's general streetlighting practice, and therefore that figure represented Vernon's reimbursement obligation. The reasoning used by the trial court in reaching this determination, in our view, is entirely defensible and again was not at all "wide of the mark." *Id.* at 132–33, 695 *A.2d* 1344.

## VI

█ Stonehill contends it is entitled to street sweeping costs pursuant to *N.J.S.A.* 40:67–23.3a(1), which recognizes that "[r]emoval of snow, ice and other obstructions from the roads and streets" is a service subject to reimbursement. Judge Stanton refused to find that the removal of accumulated sand, gravel, or grit, following the snow removal season, could be equated with the

removal of "other obstructions" or even "solid waste" referred to in subsection a(3) of the statute.

In a practical sense, sand, gravel, and grit are not generally considered to be "obstructions" when present on roadways. Vehicular traffic may be slowed somewhat by the presence of such material, but the road is certainly not obstructed, blocked, or made impassable, as the normal usage of the word "obstruction" implies. "Street cleaning" or "street sweeping" are commonly-used, everyday terms which the Legislature could have included in the statute, had that been their intent. In the absence of such terminology in the statute, that aspect of Stonehill's appeal is without merit. *See State v. Machuzak*, 227 *N.J.Super.* 279, 282–83, 546 *A.2d* 1099 (Law Div.1988) (citing *Belfer v. Borrella*, 9 *N.J.Super.* 287, 293, 76 *A.2d* 25 (App.Div.1950)).

## VII

We have thoroughly reviewed the record and considered the contentions and supporting arguments advanced and, as we have indicated in our remarks, we support the results reached by Judge Stanton. We are convinced that his findings and reasoning are fully supported by the evidence. *West Windsor, supra,* 150 *N.J.* at 132, 695 *A.2d* 1344 (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.,* 65 *N.J.* 474, 483–84, 323 *A.2d* 495 (1974)).

Affirmed.