749 A.2d 881

BRIARGLEN II CONDOMINIUM ASSOCIATION, INC.,
PLAINTIFF–APPELLANT, v. TOWNSHIP OF
FREEHOLD, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued March 7, 2000—Decided April 26, 2000.

346

Before Judges SKILLMAN, NEWMAN and FALL.

*David J. Byrne*, argued the cause for appellant (*Stark & Stark*, attorneys; *Mr. Byrne*, of counsel and on the brief).

*Duane O. Davison*, argued the cause for respondent (*Lomurro, Davison, Eastman & Munoz*, attorneys; *Mr. Davison*, of counsel and on the brief; *Chad Warnken*, on the brief).

*Dennis R. Casale*, argued the cause for amicus curiae Community Association Institute—New Jersey Chapter (*Jamieson, Moore, Peskin & Spicer*, attorneys; *Mr. Casale*, on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

This appeal raises the issue of whether *N.J.S.A.* 40:67-23.3 requires a municipality to either provide or reimburse for snow/ice removal, street lighting and trash removal to a qualified private community still under construction before the road dedication, the release of performance bonds, and the adoption of an appropriate resolution by the governing body. Even if *N.J.S.A.* 40:67-23.3 is construed to require reimbursement for such services, the question arises whether the municipality may delegate, by contractual agreement, the performance of such services, without reimbursement, to the developer of the condominium project. We conclude that *N.J.S.A.* 40:67-23.3 requires that the municipality either provide these municipal services or reimburse for the expenses incurred in performing them; a municipality may not avoid this statutory duty by contractually imposing this obligation on the developer of the project.

These are the relevant facts which are not in dispute. On December 5, 1994, defendant, Township of Freehold, entered into an agreement with K–Freehold Corp., Inc., the developer of the condominium project managed by plaintiff, Briarglen II Condominium Association, Inc. (Association or plaintiff). The developer's agreement (Agreement) was recorded in the Monmouth County Clerk's Office on December 13, 1994. On January 13, 1995, the Association was established by way of the execution and recording of a Master Deed. Individual deeds to condominium unit owners were executed and recorded thereafter.

The Agreement contained specific provisions concerning the responsibility to maintain the condominium's roadways, providing:

During the course of construction and up and until the time of final acceptance, Developer shall maintain, or shall be responsible for having others maintain, all

roads, if any, within the subdivision and site plan, which maintenance shall include snow plowing, salting, sanding and repair. The Developer is aware that Section 6-6, Removal of Snow and Ice, of the revised General Ordinances of the Township of Freehold governs the Developer's performance. Developer agrees to comply with this Ordinance provision. In the event services are rendered by the Township for snow and ice control, reimbursement to the Township will be made from the inspection fee escrow account.

The date of final acceptance for the purposes of this Agreement is deemed to be the date upon which Developer is released from his performance bond, posts a maintenance bond and a resolution of acceptance pertaining to the required improvements is adopted by the governing body of the Township of Freehold. Developer shall also provide and pay for all street lighting which must be installed in the subdivision and site plan.

Pursuant to the terms of the Master Deed, the Association provides "municipal-type" services, including snow/ice removal, street lighting, and trash removal services, to its residents through the expenditure of assessment monies collected from unit owners. Plaintiff, its owners, and/or residents have never received reimbursement from defendant for the cost of said services. Plaintiff inquired as to why defendant was not providing these services or reimbursing plaintiff for the cost of same. Defendant advised plaintiff that "reimbursement would not commence until such time as the 'development' is 'accepted ... as complete.' "

Plaintiff's condominium project is still under construction. According to defendant, "[t]here are improvements which must be completed before the roadways within the condominium project can be accepted as meeting municipal standards[; and t]he Performance Bonds posted by the Developer for the improvements have not yet been released...."

Defendant further advised plaintiff that it does not provide "municipal-type" services "in a single family home development until it meets all municipal standards and specifications."

On December 22, 1998, plaintiff filed a complaint in lieu of prerogative writs against defendant. In the complaint, plaintiff alleged that defendant failed to provide snow/ice removal, street lighting, and trash removal services to the residents of the Association in violation of the United States and New Jersey Constitu-

tions and the Municipal Services Act (Act), *N.J.S.A.* 40:67–23.2 to –23.8.

On March 19, 1999, plaintiff filed a motion for partial summary judgment, seeking a declaration that defendant's alleged failure and refusal to provide the aforementioned services or to reimburse plaintiff for the cost of same constituted a violation of the Act. Defendant filed a cross-motion for partial summary judgment, seeking an order dismissing Count Three of plaintiff's complaint which alleged violations of the Act.

Plaintiff's motion and defendant's cross-motion were heard on May 14, 1999. Plaintiff contended that defendant provides the aforementioned services to residents in the Township through the expenditure of monies collected and maintained in the general treasury of Freehold, but does not provide these services to plaintiff. Therefore, the Association, at its own cost, provides these services to its residents. According to plaintiff, pursuant to *N.J.S.A.* 40:67–23.3, once the condominium met the statutory definition of a "qualified private community," defendant's obligation to either provide the services or reimburse plaintiff for the cost of same was triggered.

Defendant noted that plaintiff's community is still under construction, and the performance bonds have not yet been released. According to defendant, its policy, which is applicable to both single family developments and condominium associations, is that roadways are not accepted until all improvements are completed and the performance bonds are released. Defendant asserted that, pursuant to *N.J.S.A.* 40:67–23.3, a municipality's obligation to either provide these services or reimburse a qualified private community for the cost of providing those services itself is not triggered until "the streets are accepted or otherwise are improved to municipal standards."

The motion judge considered the matter ripe for summary judgment disposition. The judge determined that, because the Agreement preceded the recording of the master deed, which created the Association, and the individual deeds by which unit

owners took title, "plaintiff ... and all unit owners took title in notice of and subject to the provisions of the developer's agreement." That Agreement provided that, until "final acceptance," the developer or others shall be responsible for maintaining the roadways. The motion judge found:

Clearly plaintiff and all the unit owners of Briarglen were subject to this provision of the developer's agreement and as such remain bound by it. [*N.J.S.A.* 40:67-23.3b] provides that services be provided only if the road meets all municipal standards and specifications for such dedication, except for width.

It is within the Township's discretion to pass ordinances specifying exactly when a road has met such standards. It is certainly not arbitrary, capricious and unreasonable for the Township to use release of the performance bond as its measure for when a road meets all municipal standards and specifications for dedication to the public. To the contrary, such a procedure provides a clear and concise effectuation to the Act.

Accordingly, the Township is not required to provide services under the Act until such time as the improvements are completed and the performance bond is released.

An order granting defendant's cross-motion for partial summary judgment and denying plaintiff's motion for partial summary judgment was entered on May 14, 1999. On June 29, 1999, a consent order dismissing the remainder of plaintiff's complaint, pursuant to *R.* 4:37-1, was entered to facilitate this appeal from a final judgment.

■ *N.J.S.A.* 40:67-23.3, which became operative on January 1, 1991, and was later amended, effective January 14, 1993, provides, in pertinent part:

a. Except as otherwise provided in subsection b. of this section, the governing body of every municipality shall reimburse a qualified private community for the following services as provided in sections [40:67-23.5 and 40:67-23.6] or provide the following services within a qualified private community in the same fashion as the municipality provides these services on public roads and streets:

(1) Removal of snow, ice and other obstructions from the roads and streets;

(2) Lighting of the roads and streets, to the extent of payment for the electricity required, but not including the installation or maintenance of lamps, standards, wiring or other equipment; and

(3) Collection of leaves and recyclable materials along the roads and streets and the collection or disposal of solid waste along the roads and streets.

b. Nothing in [this Act] shall require a municipality to operate any municipally owned or leased vehicles or other equipment, or to provide any of the services

enumerated in subsection a. of this section, upon, along or in relation to any road or street in a qualified private community which either (1) is not accepted for dedication to public use or (2) does not meet all municipal standards and specifications for such dedication, except for width.

*N.J.S.A.* 40:67–23.3a sets forth the services the municipality shall either perform for a qualified private community or reimburse the community for when the services are performed by others. There is no disagreement concerning the status of plaintiff's condominium association as a "qualified private community" within the meaning of the statute. *N.J.S.A.* 40:67–23.2e. Subsection b. of *N.J.S.A.* 40:67–23.3 exempts a municipality from using municipally owned or leased vehicles or other equipment on roads that are not "fully up to municipal standards." Subsection b. then, gives a municipality the option of either providing the enumerated services on the roads in a qualified private community that have not been accepted for public use or do not meet all municipal standards, or reimbursing the qualified private community for the cost of those services. It does not afford the municipality the option of not assuming any responsibility.

According to plaintiff, because the exemption in subsection b. states that "[n]othing in this act shall require a municipality to operate any municipally owned or leased vehicles or other equipment, or to *provide* any of the services enumerated in subsection a.[,]" *N.J.S.A.* 40:67–23.3b. (emphasis added), "the express language of [subsection b.] does not exempt a municipality from its obligation ... to reimburse." Plaintiff asserts that the Legislature's use of the words "provide" and "reimburse" in subsection a. and its use only of the word "provide" in subsection b. was purposeful. According to plaintiff, "[h]ad the Legislature wanted to qualify a municipality's *reimbursement obligation* as set forth in *N.J.S.A.* 40:67–23.3a, as it qualified a municipality's *providing of services obligation* as set forth in *N.J.S.A.* 40:67–23.3[b], it could have done so."

Defendant contends that the placement of the words, "[e]xcept as otherwise provided in subsection b. of this section" at the beginning of *N.J.S.A.* 40:67–23.3a, evinces a legislative intent to

exempt a municipality from both providing services and providing reimbursement until either the roads are accepted for public use or the roads meet all municipal standards, except for width. Defendant's argument is, essentially, that, had the Legislature intended the interpretation advanced by plaintiff, it would have more clearly provided for such.

■ When interpreting a statute, a court must first look at the wording of the statute to ascertain its plain meaning and intent. *Bergen Commercial Bank v. Sisler*, 157 *N.J.* 188, 202, 723 *A.*2d 944 (1999). The primary task for this court is to "effectuate the legislative intent in light of the language used and the objects sought to be achieved." *New Jersey Educ. Ass'n v. Board of Trustees, Pub. Employees' Retirement Sys.*, 327 *N.J.Super.* 326, 332–33, 743 *A.*2d 353 (App.Div.2000).

■ Courts are to presume that the legislative intent is expressed by the ordinary meaning of the words used. *National City Mortgage v. Smith*, 324 *N.J.Super.* 509, 515, 735 *A.*2d 1221 (Ch.Div.1999). However, when different interpretations exist, as is the case here, the statute's meaning is not obvious or self-evident on its face, and "[e]xtrinsic aids, such as legislative history, committee reports, and contemporaneous construction, may be used to help resolve any ambiguity and to ascertain the true intent of the Legislature." *Wingate v. Estate of Ryan*, 149 *N.J.* 227, 236, 693 *A.*2d 457 (1997). As our Supreme Court stated:

> It is the proper function, indeed the obligation, of the judiciary to give effect to the obvious purpose of the Legislature, and to that end "words used may be expanded or limited according to the manifest reason and obvious purpose of the law. The spirit of the legislative direction prevails over the literal sense of the terms."
> [*New Capitol Bar & Grill Corp. v. Division of Employment Sec.*, 25 *N.J.* 155, 160, 135 *A.*2d 465 (1957) (quoting *Alexander v. New Jersey Power & Light Co.*, 21 *N.J.* 373, 378, 122 *A.*2d 339 (1956)).]

■ The legislative intent of the Act was to "help eliminate double payment for some services which the residents of qualified private communities now pay through property taxes and fees to their association." *Legislative Fiscal Estimate Statement to S.2869* (April 18, 1989); *see Stonehill Property Owners Ass'n, Inc.*

*v. Township of Vernon,* 312 *N.J.Super.* 68, 75, 711 *A.*2d 346 (App.Div.1998) ("[T]he Legislature's underlying intention in passing the Act [was] to relieve condominium owners of the burden of paying twice for municipal services."). The Act has been interpreted as requiring "municipalities to provide within 'qualified private communities' certain municipal services or, in the alternative, to pay for those services." *New Jersey State League of Municipalities v. State,* 257 *N.J.Super.* 509, 514, 608 *A.*2d 965 (App.Div.1992) (citing *N.J.S.A.* 40:67–23.3), *appeal dismissed,* 133 *N.J.* 419, 627 *A.*2d 1129, *certif. denied,* 133 *N.J.* 423, 627 *A.*2d 1132 (1993).

■ The language of *N.J.S.A.* 40:67–23.3b only exempts a municipality from operating any municipally owned or leased vehicles or other equipment or providing any of the services enumerated in subsection a. Subsection b. does not exempt a municipality from its duty to reimburse a qualified private community for services. Exceptions in a statute should be construed narrowly. *Young v. Schering Corp.,* 141 *N.J.* 16, 25, 660 *A.*2d 1153 (1995). "An express exception excludes all other exceptions or the enlargement of existing exceptions." *Eyre v. Bloomfield Sav. Bank,* 177 *N.J.Super.* 125, 129, 425 *A.*2d 705 (Ch.Div.1980).

Based on the language of *N.J.S.A.* 40:67–23.3b, the legislative intent behind the enactment of the Act, and the canons of statutory construction, the statute, although relieving a municipality of the duty to *provide* the enumerated services to any road or street in a qualified private community that has not been accepted for public use or does not meet municipal standards (except for width), requires a municipality to *reimburse* a qualified private community for the cost of those services.

Defendant contends that imposing such a requirement on a municipality "would result in qualified private communities being given *preferential treatment* over single family homes." According to defendant, a "qualified private community would receive reimbursement for services prior to the completion of the improvements and the release of the Performance Bond, but the

single family home development would have to wait until the Performance Bond was released." Defendant emphasizes that "residents of a qualified private community [do] not deserve to be treated better than those whose houses are on public roads and streets[,]" citing *Stonehill supra,* 312 *N.J.Super.* at 76, 711 *A.*2d 346.

According to the certification submitted by defendant's engineer, before "completion" of a single family development, the developer is responsible for providing snow plowing, ice removal, salting, sanding, and repair of the roadways, and installation of street lighting. If the developer fails to provide these services, defendant will render the services and reimbursement to defendant will be made from the inspection fee escrow account.

In a single family development, however, the cost of those services is not directly passed through to the individual owners because no association is created to administer and manage "the conduct of all activities of common interest to the unit owners." *N.J.S.A.* 46:8B–12. Thus, even if the roads in a single family development are not accepted for public use or do not meet municipal standards, single family home owners do not pay "double"—through property taxes and fees to an association—for the same services as individual unit owners in qualified private communities would were we to accept defendant's interpretation of *N.J.S.A.* 40:67–23.3.

The question remains whether a municipality can pass this duty on to a developer by means of the developer's agreement.

*N.J.S.A.* 40:67–23.3 does not provide for, nor does it expressly prohibit, the delegation of a municipality's duties. However, "[i]t is well settled that the dictates of public policy may require invalidation of private contractual arrangements where those arrangements directly contravene express legislative policy or are inconsistent with the public interest or detrimental to the common good." *Sacks Realty Co., Inc. v. Shore,* 317 *N.J.Super.* 258, 269, 721 *A.*2d 1011 (App.Div.1998). Our power to declare a

contractual provision void as against public policy "must be exercised with caution and only in cases that are free from doubt." *Saxton Constr. & Management Corp. v. Masterclean of N.C., Inc.,* 273 *N.J.Super.* 374, 377, 641 *A.*2d 1129 (Law Div.1992), *aff'd,* 273 *N.J.Super.* 231, 641 *A.*2d 1056 (App.Div.), *certif. denied,* 137 *N.J.* 314, 645 *A.*2d 142 (1994). We must employ a balancing test, weighing the legislative policy and the public interest against the enforcement of the contractual provision, to determine whether the contractual provision at issue is void. *Id.* at 378, 641 *A.*2d 1129.

The legislative purpose would be frustrated if municipalities were permitted to contract away their statutory duty to either provide or reimburse qualified private communities for the enumerated services. If municipalities were permitted to do so, the result would be that the residents of qualified private communities would be paying double for services, that is, through property taxes and fees to their association. It is just such a result that the Act seeks to avoid.

Therefore, we conclude that the provision in the Agreement, whereby defendant delegated its statutorily imposed duty to either provide the enumerated services or reimburse the qualified private community for the cost of same to the developer who, in turn, passed those costs on to the Association, directly contravenes the express legislative policy of *N.J.S.A.* 40:67–23.3 and, thus, is void as against public policy.

Notably, *N.J.S.A.* 45:22A–43 requires:

A developer subject to the registration requirements of [*N.J.S.A.* 45:22A–26] shall organize or cause to be organized an association whose obligation it shall be to manage the common elements and facilities. The association shall be formed on or before the filing of the master deed or declaration of covenants and restrictions, and may be formed as a for-profit or nonprofit corporation, unincorporated association, or any other form permitted by law.

Certainly then, the formation of the Association was contemplated by both the developer and defendant at the time they entered into the Agreement.

Having determined that the provision in the Agreement, whereby defendant delegated its statutorily imposed duty to either provide the enumerated services or reimburse the qualified private community for the cost of same to the developer, is void, the fact that the Association and the individual unit owners had constructive notice of such provision is of no consequence. Because we have determined that defendant is statutorily required to reimburse plaintiff for the enumerated services, we need not address plaintiff's argument that defendant is equitably obligated to ensure the speedy and proper completion of the development.

Reversed and remanded.