917 A.2d 257 (2007)
391 N.J. Super. 83
Robert J. TRIFFIN, Plaintiff-Respondent,
v.
BANK OF AMERICA, Defendant-Appellant, and
April D. Jackson and Denise G. Pistilli, Defendants.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 2007.
Decided March 6, 2007.
*258 Gregg S. Sodini, Edison, argued the cause for appellant (Sodini & Spina, attorneys, Iselin; Mr. Sodini, on the brief).
Robert J. Triffin, argued the cause pro se.
Before Judges WINKELSTEIN, FUENTES and BAXTER.
The opinion of the court was delivered by
WINKELSTEIN, J.A.D.
Plaintiff Robert Triffin purchased an assignment of the rights to a number of dishonored checks from A1 Check Cashing (A1), a licensed check cashing agency. As a holder in due course, plaintiff sued defendant Bank of America (BOA), the drawer bank, and defendant April Jackson, the maker of one of the checks, for the amount of the check plus other miscellaneous charges. BOA appeals from a summary judgment in favor of plaintiff in the amount of $591.[1] We affirm.
Plaintiff routinely takes assignments of the rights to dishonored checks from licensed check cashers. He then, pursuant to various provisions of the Uniform Commercial Code as adopted in this State, see generally N.J.S.A. 12A, sues the maker of the check and the drawer bank. Here, A1 cashed a check for Jackson in the face amount of $471 and BOA stopped payment on the check due to insufficient funds. After taking an assignment of the rights to the check from A1, plaintiff, as a holder in due course, sought payment of the check from BOA. See N.J.S.A. 12A:3-414b (drawer of an unaccepted check liable for payment to a holder in due course); N.J.S.A. 12A:4-403 (Uniform Commercial Code Comment 7) (while payment on check may be stopped by drawer bank, bank remains liable on check to holder in due course); State v. Burks, 188 N.J.Super. 55, 60, 455 A.2d 1148 (App.Div.) ("drawer of a check is liable for the amount of the check regardless of whether there are sufficient funds in the account to pay it"), certif. denied, 93 N.J. 285, 460 A.2d 684 (1983).
BOA does not dispute that if the assignment agreement between A1 and plaintiff is valid, plaintiff, as a holder in due course, is entitled to judgment against BOA for the face amount of the check. See Triffin v. Cigna Ins. Co., 297 N.J.Super. 199, 201-02, 687 A.2d 1045 (App.Div. 1997) (transferee who took assignment of instrument with notice of its dishonor from holder in due course entitled to enforce instrument against issuer). Instead, BOA asserts that A1 is barred from assigning its rights to the dishonored check to plaintiff because of a civil fraud judgment entered against plaintiff in 1988. See In re Triffin, 151 N.J. 510, 513-14, 701 A.2d 907 (1997) (judgment for civil fraud entered against plaintiff in Pennsylvania Superior Court in 1988) (citing Triffin v. Cont'l Bank, 386 Pa.Super. 660, 555 A.2d 947 (1988), appeal denied, 524 Pa. 610, 569 A.2d 1369 (1989)). BOA claims that the public policy expressed by N.J.S.A. 17:15A-48a(5), a provision of The Check Cashers Regulatory Act of 1993, N.J.S.A. 17:15A-30 to -52 (Check Cashers Act), prohibits a licensed check casher, such as A1, from entering into a contract with a person, who, like plaintiff, has had a civil fraud judgment entered against him. That statute provides that the Commissioner of Banking
may revoke or suspend a license if, after notice and hearing, the commissioner determines that the licensee . . . [i]s associating with, or has associated with, *259 any person who has been convicted of an offense involving breach of trust, moral turpitude or fraudulent or dishonest dealing, or who has had a final judgment entered against him in a civil action upon grounds of fraud, misrepresentation or deceit[.]
[N.J.S.A. 17:15A-48a(5) (emphasis added).]
Said another way, BOA claims that if the check casher cannot associate with plaintiff because of the judgment for fraud, public policy also prohibits it from conducting business with him by assigning him the rights to the dishonored check.
While no published opinion in this State has directly addressed the issue,[2] we are guided in our analysis by the general principles that apply to determine when public policy requires the invalidation of a private contract, such as the assignment agreement between A1 and plaintiff. We discussed those principles in Briarglen II Condo. Ass'n, Inc. v. Twp. of Freehold, 330 N.J.Super. 345, 348-49, 749 A.2d 881 (App. Div.), certif. denied, 165 N.J. 489, 758 A.2d 648 (2000), where the Township had entered into an agreement with a private community developer that required the developer to provide services to the condominium project it was constructing without reimbursement for those services from the Township. The services included road maintenance, trash removal and the like, services that are typically provided by a local government to its residents, including residents of private communities. See id. at 348-49, 749 A.2d 881. In light of N.J.S.A. 40:67-23.3, which directs that local governments shall reimburse "qualified private communit[ies] for . . . services . . . or provide . . . services within a qualified private community in the same fashion as the municipality provides these services on public roads and streets," we invalidated the agreement, concluding that it contravened the express legislative policy of the statute. Id. at 356, 749 A.2d 881.
In arriving at our conclusion, we addressed the principles that impact upon a determination of whether public policy requires invalidation of private contracts:
the dictates of public policy may require invalidation of private contractual arrangements where those arrangements directly contravene express legislative policy or are inconsistent with the public interest or detrimental to the common good. Our power to declare a contractual provision void as against public policy must be exercised with caution and only in cases that are free from doubt. We must employ a balancing test, weighing the legislative policy and the public interest against the enforcement of the contractual provision, to determine whether the contractual provision at issue is void.
[Id. at 355-56, 749 A.2d 881 (internal quotations and citations omitted).]
To apply these precepts here, we look first to the wording of N.J.S.A. 17:15A-48a(5) to ascertain its plain meaning and intent. See Bergen Commercial Bank v. Sisler, 157 N.J. 188, 202, 723 A.2d 944 (1999). In doing so, we observe that the statute does not actually prohibit a check casher from associating with a person who has had a civil fraud judgment entered against him; nor does it address whether a licensee may contract with, or otherwise *260 conduct lawful business with, such a person. It simply provides the Commissioner of Banking with the discretion, after notice and a hearing, to revoke a check casher's license if the licensee associates with such a person. Attributing an ordinary meaning to the language of the statute, see Briarglen, supra, 330 N.J.Super. at 355-56, 749 A.2d 881 (we presume that the "legislative intent is expressed by the ordinary meaning of the words used"), we conclude that the Check Cashers Act, on its face, does not invalidate the assignment.
We next look to "`[e]xtrinsic aids, such as legislative history[] [and] committee reports,'" ibid. (first alteration in original) (quoting Wingate v. Estate of Ryan, 149 N.J. 227, 236, 693 A.2d 457 (1997)), to determine if the policy underlying the statute, regardless of the statute's plain language, equates to a general prohibition against a licensee contracting with or otherwise conducting business with such a person. That analysis is similarly bereft of support for BOA's argument.
The purpose of the Check Cashers Act is to "provide[] a new regulatory framework for the business of cashing checks." Assemb. Fin. Inst. Comm. Statement, Assembly No. 1323-L. 1993, c. 383. It requires persons who charge or receive a fee or other consideration for cashing a check to be licensed by the State. Ibid. The legislation was enacted at the same time the Legislature amended the Casino Control Act, N.J.S.A. 5:12-1 to -90, "in an effort to address the issue of money laundering through New Jersey casinos and check cashing establishments." See S. Comm. Substitute for S. Bill Nos. 1196, 1997 and 1221. The Check Cashers Act requires the "commissioner of banking to establish procedures and forms by which application may be made for a license to be a check casher," and the legislation "spells out violations and imposes civil and criminal penalties for violations of the Act or of rules and regulations promulgated pursuant to the Act." Ibid.
This legislative history shows that the Check Cashers Act was enacted to establish a regulatory framework to protect against money laundering. It does not reflect a public policy that would prohibit a licensee from lawfully conducting business with a person simply because the individual has had a civil fraud judgment entered against him. The Commissioner's capacity to suspend licenses is merely a tool available to the State in pursuit of its goal of curtailing money laundering. The language of the statute that confers on the Commissioner the authority to suspend or revoke a license does not warrant the conclusion that the entry of a fraud judgment against an individual will constitute a per se bar to that person's ability to accept an assignment of rights from a licensed check casher.
The conduct attacked by BOA, the assignment of the dishonored check to plaintiff by A1, is neither "inconsistent with the public interest [n]or detrimental to the common good." Briarglen, supra, 330 N.J.Super. at 355-56, 749 A.2d 881. To the contrary, the right of a holder in due course to seek payment from the maker of a dishonored check is well settled. N.J.S.A. 12A:3-203b; N.J.S.A. 12A:3-414b; Triffin v. Cigna Ins. Co., supra, 297 N.J.Super. at 202, 687 A.2d 1045. Allowing a holder in due course to transfer its rights "assure[s] the holder in due course a free market for the instrument." Comment 2 to N.J.S.A. 12A:3-203b. The holder in due course may thus transfer its rights so long as it is not a "party to fraud or illegality affecting the instrument," such as "wash[ing] the instrument clean by *261 passing it into the hands of a holder in due course and then repurchasing it." Ibid. Here, the evidence does not suggest, and BOA does not argue, that plaintiff was a party to a fraud with regard to the dishonored check that is the subject of the litigation, or that plaintiff is involved in laundering the instrument.
"Parties have a right to contract in any way they see fit." Headley v. Cavileer, 82 N.J.L. 635, 639, 82 A. 908 (E. & A.1912). While contract rights are not absolute, B. Jeselsohn, Inc. v. City of Atlantic City, 70 N.J. 238, 242, 358 A.2d 797 (1976), they "are generally assignable, except where assignment is prohibited by operation of law or public policy." Somerset Orthopedic Assocs., P.A. v. Horizon Blue Cross & Blue Shield of N.J., 345 N.J.Super. 410, 415, 418, 785 A.2d 457 (App.Div.2001). And as we previously indicated, only in cases that are free from doubt should we conclude that a contract is void as against public policy. Briarglen, supra, 330 N.J.Super. at 355-56, 749 A.2d 881.
Here, in weighing both the right to contract as expressed in our common law and the right to freely assign instruments pursuant to the Uniform Commercial Code as adopted in New Jersey, against the language and purpose of N.J.S.A. 17:15A-48a(5), we are not convinced that public policy prohibits the assignment of the licensee's rights in dishonored checks to persons who have been subject to a civil judgment of fraud. The Check Cashers Act provides the Commissioner of Banking with the discretion, after notice and a hearing, to revoke or suspend a check casher's license if the check casher associates with a person who has had a civil fraud judgment entered against him. The public policy expressed by the Act does not prohibit a check casher from lawfully conducting business with that person.
Affirmed.
NOTES
[1] Plaintiff also recovered a judgment against Jackson, who has not appealed.
[2] While the issue was raised in Triffin v. PNC Bank, N.A., Docket Nos. A-6489-04 & A-1949-05, 2006 WL 3524276 at *2-*3 (App. Div. Dec. 8, 2006), we remanded to the trial court for further proceedings (slip op. at 7-8). In Triffin v. Fleet Nat'l Bank, Docket No. A-2064-03 (App.Div. Feb. 10, 2005), the issue on appeal was whether the Check Cashers Act created a private right of action, and we did not address the public policy argument that defendant makes here. (slip op. at 3).